McCARROLL, COMMISSIONER OF REVENUES, v. SCOTT PAPER BOX COMPANY.

4-5116

Opinion delivered April 18, 1938.

*J. Hugh Wharton,* for appellant.

*Pace & Davis* and *Henry E. Spitzberg,* for appellees.

GRIFFIN SMITH, C. J.   The question to be determined is whether appellee, Scott Paper Box Company, must collect and pay the Arkansas retail sales tax on pasteboard boxes it manufactures and sells to the Wortz Biscuit Company.

The case was tried on an agreed statement of facts, the material provisions of which are:

"The biscuit company, in the manufacture of its packaged articles, uses the paper boxes as a component part of the article and resells the same in unchanged form to the wholesaler, jobber, or retailer, who in turn sells the package in unchanged form to the ultimate consumer.

"The biscuit company sells said manufactured products in original containers or packages for a greater or larger amount of money than they sell the same cakes, cookies, etc., in bulk.

"The cost of the box merges into and is an element in the cost of the packaged article, representing twelve to fourteen per cent. of the net selling price of the finished article, and is so computed by the biscuit company and not considered by it as a part of its general overhead expense.

"The cost of the box is computed in arriving at the selling price of the finished article by the biscuit company the same as the cost of all other ingredients and constituents of the finished article.

"The biscuit company does not use the boxes for any other purpose than resale to the wholesaler, jobber, or retailer, as aforesaid, and the retail merchant ultimately sells the packaged goods in small quantities to the housewife or other consumer; that the said retailer in the ultimate sale of packaged goods places the same in a sack along with other goods purchased by the consumer, unless

otherwise requested by the ultimate purchaser or consumer.

"The housewife or ultimate consumer can purchase from the retailer in bulk a greater quantity of the product for the same amount of money as the original packaged goods cost."

The tax sought to be sustained is levied by act 154 of 1937. Under "Definitions" in § 3 the act reads: "The term 'sale at retail' shall mean any transaction, transfer, exchange, or barter, by which is transferred for a consideration the ownership of personal property. [Subdivision 1 of paragraph b]. The test of a sale at retail [Subdivision i] is whether the sale is to a consumer for use and not for resale. Sales of goods which, as ingredients or constituents, go into and form a part of the tangible personal property for resale by the buyer are not within the act." Section 9 directs that the tax "shall be collected by the retailer from the consumer." Section 14 is: "Any person engaged or continuing in business as a retailer; and retailer and wholesaler or jobber, shall keep his books so as to show separately the sales of each business. He shall consider as retail sales all sales made by him to any person other than a person purchasing for resale in the regular course of business or for processing."

In its decree permanently enjoining the commissioner of revenues the chancery court said:

"The biscuit company does not change the form of the boxes which become a component part of the articles it sells in large quantities and at wholesale. Neither the Scott Paper Box Company nor the Wortz Biscuit Company uses or consumes the pasteboard or paper boxes, but both of them resell them at wholesale. . . . The tax levied by act 154 is paid by the final purchaser of individually boxed products upon purchase by the final consumer from a retailer."

We agree with the chancellor's analysis of the transactions and his determination of the law applicable thereto.

The stipulation is not reasonably susceptible of any other interpretation. It is clear that the Wortz Company sells at wholesale to a retailer *a package of its manufactured products*—not a quantity of cakes or cookies or crackers *enclosed in a box it has consumed.*

It is shown that the container appreciates the selling price by twelve to fourteen per cent. The stipulation makes use of the term "finished article" in identifying the object of ultimate sale. These commodities—cakes, cookies, and crackers—are also sold in bulk by the Wortz Company, and for less, proportionately, than the same merchandise is sold when supplied in packages. The conclusion is inescapable, and the stipulation concedes, that the cost of the packing is added to the sale price, just as the flour, sugar, and other constituents which enter into the manufacturing process become a part of the completed transaction.

Expressed differently, the Wortz Company proposes to prepare, box, and offer in the market at wholesale the particular commodities in question. It buys flour, sugar, soda, salt, shortening, flavoring, etc., as ingredients. None of these components is taxable under act 154 when purchased for the purposes mentioned. The plan of sale, however, calls for wrapping or enclosure in individual cartons at the time of manufacture; and it is for the latter purpose that purchase of pasteboard boxes is made.

Appellant contends there is consumption when the packing operation occurs, and that the boxes form no part of the integration. It urges that the instant case is controlled by *Wiseman, Commissioner,* v. *Arkansas Wholesale Grocers' Association,* 192 Ark. 313, 90 S. W. 2d 987, where it was held that the sales tax applied to wrapping paper, paper bags, and twine sold by wholesalers to retailers, for use by the latter in facilitating individual sales. But there is this difference: In the suit at bar the retailer receives the completed, wrapped packages. In the Wiseman case the wrapping paper, bags, and twine were sold for convenience of retailers in manually wrapping or enclosing bulk commodities. The price of a dozen oranges, a peck of potatoes, a roast, and other

merchandise customarily found in a retail grocery store, is predetermined either by weight or count, without reference to the attributes of delivery.

The opinion in the Wiseman case expressly declares that the subject of the tax was absorbed by the merchant as a part of the cost of doing business, ''that is, they are taken care of out of his profits, and not added to the selling price.''

In the instant case it is stipulated that the cakes, cookies, and crackers, when sold in bulk, retail for less than if delivered in packages. This admission by appellant shows that cost of packing was added to the wholesale price paid by the retailer; and the retailer, in turn, computed his or her profit by requiring the consumer to pay the wholesale cost, plus the percentage of gain which the circumstance justified.

The decree is affirmed.

SMITH and DONHAM, JJ., dissent.

SMITH, J., (dissenting). The conclusion appears to be inescapable that, if the decree here appealed from is correct, as the majority hold, we were in error in reversing the same chancellor in the case of *Wiseman* v. *Arkansas Wholesale Grocers' Ass'n.,* 192 Ark. 313, 90 S. W. 2d 987. His decrees in these two cases are consistent, and if he is right now he was not in error before.

When that case and this are read together the net result is that paper bags sold to be used as containers for merchandise in the retail trade are subject to the sales tax, whereas paper boxes sold to be used for the identical purpose are not taxable. I find no authority in the Sales Tax law for making this distinction between bags and boxes. An exemption has been given to one dealer which, under the same circumstances, is denied another, and I, therefore, respectfully dissent.

The instant case was heard upon an agreed statement of facts, which must be accepted as true for the purpose of deciding this case, but which, of course, must be read in its entirety.

The former case was disposed of upon a demurrer to the dealer's complaint, so that, in effect, that case was

also disposed of upon an agreed statement of facts. It was alleged in the complaint in the former case that the wrapping paper, paper bags and twine "are sold for re-sale by the retailer, and are resold by the retailer to his customer although no specific charge is made for wrapping paper, paper bags or twine," and that the bags, etc., are "materials used for processing and are not subject to a sales tax."

Stripped of all unnecessary verbiage, that is the effect of the stipulation in this case. It is here stipulated that the boxes sought to be taxed are expensive. No doubt the boxes are inclosed in wrappers which are attractive as advertising matter, and more is charged for the cakes placed in these boxes than would be charged for cakes sold in bulk. No doubt also all dealers charge more for small quantities, separately wrapped, whether in bags or in boxes, than would be charged, per pound or per quart, when larger quantities are sold in bulk.

Appellee says that "the sales to the Biscuit Company are not to a consumer for use, as the Biscuit Company does not consume or use the boxes, but resells them in original form and charges a fixed price for them." If the question presented on this appeal was whether the tax should be imposed on boxes sold by the manufacturer to a dealer for resale as such, we might all agree that they would not be taxable. But the stipulation recites that the Biscuit Company sells its manufacturer products in boxes which it buys from the manufacturer. The Biscuit Company is not engaged in the business of selling boxes, and does not sell boxes as such. It packs its products in boxes and sells the article contained in the box. The thing sold is the cake or other cookies contained in boxes. It is not stipulated nor is it contended that the Biscuit Company sells the box for one price and the cakes for another. If this were so it would be an innovation in merchandising constituting something new under the sun. It is stipulated that more is charged for the cakes because they are in small convenient boxes than would otherwise be charged or than would be charged for a bulk sale in larger quantities. But the thing sold by

the Biscuit Company is the cakes and cookies, and the manufacturer sells the boxes to the Biscuit Company, to be used as containers for them, just as the dealer in bags sells the bags for the same purpose.

It is stipulated that "The retailer collects and the ultimate consumer pays the sales tax on the purchased article when the transaction is consummated." But so did the ultimate consumer pay the sales tax when he bought the merchandise contained in a paper bag; but this did not, according to the former opinion, exempt the dealer from paying sales tax on the bags which he purchased.

Appellee cites cases from other states, in some of which it was held, under the statutes there construed, that the test as to whether a sale is wholesale or retail is the quantity sold; but admits that the test ordinarily applied is that of consumption and use, as opposed to a resale, in determining the difference between a wholesale and a retail sale. This latter is the test which we applied in the former case. Without regard to quantity or price, as we said in the former opinion, the test of liability for the sales tax is whether the purchaser buys for his own consumption and use. Whatever the law may be elsewhere, there can be no question about the law in this state for paragraph (i) of § 3 of the Sales Tax Law reads as follows: "(i) The test of a sale at retail is whether the sale is to a consumer for use and not for resale." (Act 154, Acts of 1937, p. 513.) Who is the consumer or user of the box? There appears to be no other reasonable answer to this question than to say that the person who consumes and uses the box is he who devotes it to the purpose for which it was manufactured and purchased. The boxes were made to put cakes in them, just as bags are bought to put other articles in them. It is the Biscuit Company which devotes the box to the use for which it was intended and purchased by putting cakes in them for sale. The ultimate purchaser buys the cakes, which are contained in a box, just as he might buy cakes contained in a bag, and the bag and the box are mere containers and have been used as such when merchandise is placed in them for sale, and this

use is complete even before a sale is made to the ultimate consumer of the cakes, and is true also even though the cakes may never be sold. After the cakes have been sold and eaten the box if of no more value than would be a bag which might have contained them. The box or bag was consumed and used when the cakes were placed in them. They have no other value or use, and when the box or bag has been emptied of its contents it may then be used to start a kitchen fire, or be burned in an incinerator, or thrown into an alley, or upon a vacant lot, or over the fence of some neighbor's back yard.

The word "use" is defined as a noun in 66 C. J., at p. 65, and is there said to be one of the most comprehensive words in our language, and to mean the employment of a thing for the accomplishment of a particular purpose. At page 72 of 66 C. J. the word "use" as a verb is defined as "to employ for the attainment of some purpose or end." The Biscuit Company used the boxes for the accomplishment of a particular purpose, just as the purchaser of the paper bags used the bags—that of making sale of their products. Neither the quantity of paper boxes or paper bags purchased nor the price paid for them can change this self-evident fact, and, therefore, the purchaser of either boxes or bags is subject to the sales tax, if not purchased for resale.

These boxes are not sold for further processing. They are boxes when purchased, and are nothing more when used by the Biscuit Company. They never become a part of the cakes as does the sugar and other ingredients used in baking cakes. They are mere containers for the cakes, just as a paper bag would be, if used for the same purpose, and as we have held bags taxable, there appears to be no reason to exempt boxes sold and used for the same purpose.

The Biscuit Company packs its cakes, which is the product it is selling, in boxes for the purpose of selling them to a particular class of customers, who prefer the packaged article to the article in bulk, and, while the cakes are sold for a higher price because they are in boxes, it is the cakes which are sold.

We said in the former opinion, when we were considering bags and not boxes, that "The state imposes a tax upon that which is consumed and used, and exempts only that which is sold for resale." Neither the bags in that case nor the boxes in this were bought for resale. Both were bought and used for the same purpose, that of making sale of the articles placed in them.

If the law in regard to paper boxes is the same as the law in regard to paper bags, the former opinion is decisive of this case, and should be followed for consistency's sake, unless we overrule it, which the majority do not do. It was said in the former case that "The quantities of goods sold, or prices at which they are sold, are immaterial in determining whether or not a sale is at retail, within this act, because the act itself provides that the term 'sale at retail' shall mean any transaction, transfer, exchange or barter by which is transferred for a consideration the ownership of any personal property, thing, commodity or substances, or the furnishing or selling for a consideration any of the substances and things designated and defined in the act, and it makes no difference whether this is sold in large or small quantities, nor by whom it is sold, if it is sold to the transferee for consumption or use, or for any other purpose than resale."

There is no question but that the Biscuit Company bought the boxes, nor does there appear to me to be any question but that the Biscuit Company used and consumed the boxes by devoting them to the purpose for which they were purchased—that of containing cakes.

The argument is made that if this sale is taxed an inducement is offered to buy boxes out of the state, where they may be purchased without paying the tax. This is true. But this argument applies to the policy, rather than to the power, of imposing such a tax. The consumer who purchases in a state having no sales tax of course pays no tax. But if he purchases in this state he must pay the tax. Unquestionably this tends to encourage purchases abroad rather than at home. Merchants in border towns protested against a sales tax for that reason and asked, but were denied, exemption from the

sales tax on that account. The legislation was enacted regardless of this consequence. We have no authority to consider the policy; we may only determine the legislative power, and this power was held to exist in the suit brought to test the constitutionality of our first sales tax. *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. 2d 91.

I, therefore, dissent, and am authorized to say that Mr. Justice DONHAM concurs in the views here expressed.