In the Matter of the Application of THE AMERICAN MOLASSES Co. OF NEW YORK, Petitioner, for an Order against JOSEPH D. McGOLDRICK, Comptroller of the City of New York, Respondent, to Review a Determination.

First Department, April 6, 1939.

*Morton L. Deitch* of counsel [*Sol M. Stroock* and *Milton Socolof* with him on the brief; *Stroock & Stroock*, attorneys], for the petitioner.

*Arthur A. Segall* of counsel [*Sol Charles Levine* and *Morris L. Heath* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the respondent.

CALLAHAN, J. Local Law No. 20 (published as Local Law No. 21) of the New York City Local Laws of 1934, as amended by Local Laws No. 24 (published as No. 25) of the New York City Local Laws of 1934, imposes a tax on sales at retail of tangible personal property, with certain exemptions. Molasses is included in the exemptions granted to sugar and sugar products. The particular question involved in this proceeding is whether containers in which petitioner merchandised its molasses were taxable when purchased by petitioner. The parties agreed that the answer to this question depends on whether the petitioner purchased such containers for the purpose of resale as tangible personal property.

A " sale," under the local law, is defined to include any transfer of title or possession, or both, for a consideration. A " retail sale " (which is the sale which the statute intends to tax) is defined to mean a sale to a customer for any purpose other than resale in the form of tangible personal property.

" Tangible personal property " is defined in the local law as corporeal personal property.

Petitioner has been taxed as a purchaser under that provision of the local law which requires that the tax shall be payable by the purchaser, where the vendor has failed to collect the tax.

The petitioner's business consists in the sale of molasses and syrups in various containers, ranging in size from one pint to fifty-seven gallons. The comptroller has not imposed any tax on the smaller containers, to wit, one-pint, one-quart and ninety-nine percentum of the one-gallon cans. He has imposed a tax on one percentum of the one-gallon cans, and on all the larger containers in which petitioner's products are sold. These containers include six-gallon steel pails, eleven-gallon steel pails, sixteen-gallon steel pails, fifty-five-gallon steel drums and fifty-seven-gallon wooden barrels. The reason advanced by the comptroller for not taxing the smaller containers is that these sizes reach the housewife, or the ultimate consumer of the molasses and syrup.

The larger size containers are sold either directly to bakers or confectioners, who consume the petitioner's products, or to wholesale distributors who, in turn, sell to such bakers and confectioners, or to retail grocers. The fifty-five-gallon steel drums are used exclusively for syrups, and are sold to bakers and confectioners. The fifty-seven-gallon barrels are used for both syrup and molasses. They are sold in a large part to bakers and confectioners. On some occasions barrels of molasses and syrup are sold to retail grocers, who resell the contents in smaller quantities to the ultimate consumer.

In omitting the tax on the smaller and imposing it on the larger containers, the comptroller seems to have followed article 37 of

certain regulations adopted by him in aid of the assessment of the sales taxes. The local law permits the comptroller to adopt regulations to carry out the enforcement of the tax, but he cannot by means of such regulations extend the law to cover and include articles not taxed. (See *Dun & Bradstreet, Inc.*, v. *City of New York*, 276 N. Y. 198.) Article 37 of the comptroller's regulations relates to taxes on receipts from the sale of tangible personal property used in connection with the sale of other tangible personal property. In so far as it is material, this regulation provides in subdivision 1 thereof that those products which are ordinarily delivered with the tangible personal property sold to the final buyer or consumer, for which no separate charge is made, including such things as tin cans and other containers without which the delivery of the product sold is impractical, are not subject to the tax. Subdivision 2 of article 37 provides that certain container material used in the preparation for sale of other tangible property sold for resale, which material does not pass to the ultimate consumer with the property originally contained therein, is deemed to be sold at retail by the purchaser who uses the same, and such purchaser is required to pay a tax thereon.

It will be seen that article 37 does not follow the local law and make the test of taxability whether the container or container material is to be resold by the taxpayer, but rather applies the test of whether they accompany the product of the taxpayer to the ultimate consumer. Under the regulation, therefore, a purchaser might resell the container or container material purchased by him, and his vendee might again resell the same, but if such container is discarded at some place in the course of merchandising before it reaches the ultimate consumer, the regulation would impose a tax on it when it is first purchased by the one who used it as a container. The regulation, therefore, at least in this respect, disregards the provisions of the local law, which make the imposition of the tax depend on whether the article is bought for resale as tangible personal property.

The comptroller asserts, however, that the containers involved herein were not purchased for resale as tangible personal property, and, therefore, were taxable irrespective of the application of article 37 of his regulations. He contends that the variance between the local law and the regulation as set forth in article 37 merely exempted some smaller containers from taxation which otherwise might have been taxed. The narrow question presented to us, therefore, is whether the larger containers taxed by the comptroller were purchased by the petitioner for resale as tangible personal property.

The testimony concerning the manner in which petitioner carries on its business discloses that, after purchasing the various containers above enumerated, it places its commodity therein and sells the packaged article at a price which is based upon the quantity of syrup or molasses in the container. For instance, as to the larger containers, which are the ones taxed, the evidence shows that they are sold at a price based on a fixed rate per gallon for the contents thereof. The customer is not billed separately for the containers, but the price per gallon of the contents varies according to the container requested by the customer. The evidence discloses that this variation is due to the difference in the relative cost of the various containers. For instance, it appears that when syrup is sold in a drum, the price per gallon is higher for the same quality of syrup than when sold in a barrel. The difference represents the higher cost of the drum over the barrel. Therefore, while no separate notation is made in the billing for the price of the container, the price charged reflects not only the cost of the product, and its handling, but the cost of the containers and the handling thereof. By reason of the nature of petitioner's product, it is not sold excepting in containers. Accordingly, we have no proof of a basic sales price for syrup or molasses, but we have clear proof that the petitioner quotes its product only in connection with a specified size and kind of container, and that the price it quotes per gallon varies, depending upon the nature of the container used.

In each instance title to the container passes to the customer, with the transfer of possession. The container may not be returned. The evidence discloses that in many instances the customer resells the empty containers, particularly the barrels and the steel drums, for which there is an established market.

Under the circumstances, it would seem that upon a sale of a pail, barrel or drum of syrup or molasses there is a transfer of title and possession of the container, as well as of its contents, and that there is an ascertainable consideration paid for the container. We thus find present all the elements of a sale as defined in the local law. There is a transfer of title and possession for a consideration. The question that remains is whether or not there has been a sale of the container as " tangible personal property " within the meaning of the law.

Applying the definition of tangible personal property found in the local law, it is plain that a pail, a barrel or steel drum is " corporeal personal property " of definite form. No substantial change takes place in the form of the container from the time of its purchase by petitioner until it reaches the ultimate consumer of the product. It may have been sealed and opened, and branded

with petitioner's label in the meantime, but, otherwise, it remains in its original form throughout. Except for the restriction imposed by law against reuse for the same product, the container may be used again as such. It commands a ready market, not merely as waste, but as a usable object. This case, therefore, differs from *Matter of Mendoza Fur Dyeing Works* v. *Taylor* (272 N. Y. 275) in that here the identity of the property used is maintained. There the article taxed was dye which the taxpayer applied to furs delivered into its possession for processing. The taxpayer was not engaged in the business of merchandising furs but merely in rendering services in connection with them. The dye which it applied lost its identity as such, and became part of a manufactured article.

Though the present local law does not make the determinative factor as to taxability of a container the consumption thereof, the extent of the consumption or use has some bearing on whether an article is sold at retail. Here the use makes no substantial change in the identity of the article. The article is not consumed. It remains separable and distinct at all times.

It might well be (as held in the *Mendoza* case, *supra*) that an article which has been intermingled with others so as to become a mere ingredient or component part of a manufactured product, is not deemed resold as tangible personal property when the composite product is sold. But the term " sold as tangible personal property " would not ordinarily be given the narrow meaning of tangible property sold separate and apart from any other tangible personal property, at least where the articles so sold are readily separable. That articles are sold together for a single price would not change the transaction from a resale, at least where the price of the composite product clearly represents the aggregate of the value of the articles so sold.

The present containers differ from wrapping paper, string, etc., used by a merchant to wrap or tie his merchandise. After use such wrappings are considerably changed in form. They may not readily be used again for the same commercial purpose. They become essentially waste. They are, therefore, consumed to a far greater extent than are the present containers. In addition, the cost of such wrapping articles is ordinarily figured as part of the overhead or profit, and does not, in most instances, directly vary the cost of the article sold. We draw such a distinction in the immediate case. Here a portion of the tax imposed was based on the purchase of labels lithographed with advertisements of petitioner's products. These labels were pasted on the barrels. They were incapable of further use and, in our opinion, the purchase thereof was properly taxed as distinguished from the purchase

of the barrel itself. The labels were not bought for resale as tangible personal property. This distinction was recognized in two cases which were decided in the State of Arkansas. There the Supreme Court, in *Wiseman* v. *Arkansas Wholesale Grocers' Assn.* (192 Ark. 313; 90 S. W. [2d] 987), held that purchases of twine, wrapping paper, etc., were taxable, because such things were consumed when placed on the packages by the retailer. The court pointed out that such wrapping materials did not substantially affect the price of the articles, but were taken care of out of profits.

In a later case (*McCarroll* v. *Scott Paper Box Co.*, 195 Ark. 1105; 115 S. W. [2d] 839) the same court, in applying the same statute, held that a manufacturer was not required to pay a retail sales tax on pasteboard cartons sold to a bakery company. The bakery used the cartons in which to pack its biscuits. It resold the packaged articles to retail merchants. It appeared that similar biscuits were sold in bulk or as loose biscuits. When sold in bulk the price was lower than when packaged. The statute involved imposed a tax on sales at retail, and like our local law excluded sales for resale from taxation. The court said in the *McCarroll* case (*supra*) that as the cost of the carton added a definite percentage of increase to the sales price of the biscuits, the cartons were resold; that the bakery company did not consume them, and that, therefore, no tax was collectible when the cartons were purchased.

In the present case the contents of the containers (syrup and molasses) are exempt from a sales tax because they are sugar products. The question of whether the container is taxable when purchased should not depend on the fact that it contains an exempted article when resold. Whether the container is taxable must depend upon whether the purpose is to resell it as tangible personal property. However, the fact that the contents of the container are exempt may present some difficulties in connection with the collection of the tax when a taxable sale thereof is reached. That difficulty, however, cannot alter the law with respect to what is a taxable sale.

If we consider a situation where the contents of the container was not an exempted commodity and thus was taxable when sold to the ultimate consumer, it would appear plain that a double tax would be imposed if the container is taxed when purchased for use, and again in connection with its content when sold to the ultimate consumer. Such double taxation should be avoided when possible. (*Mendoza* case, *supra*.) It may be avoided here if the local law is applied according to its tenor.

As to some of the articles which have been taxed, including some of the containers we have been discussing, some coal purchased

by the petitioner and a product used in rectifying sugar, known as " Darco," it is apparent that the purchases thereof were transactions in interstate commerce.  As such they were not taxable under the local law.  (See *Matter of National Cash Register Co.* v. *Taylor,* 276 N. Y. 208; *Matter of West Publishing Co.* v. *Taylor,* Id. 535; *Matter of Sears, Roebuck & Co.* v. *McGoldrick,* 279 id. 184; *Compagnie Generale Transatlantique* v. *McGoldrick,* Id. 192.) Respondent asks us, however, to hold that the cases cited have been overruled, in effect, by the recent decisions of the United States Supreme Court in the cases of *Felt & Tarrant Manufacturing Co.* v. *Corbett* (305 U. S. 574); *Pacific Telephone & Telegraph Co.* v. *Corbett* (Id. 574), and *Southern Pacific Co.* v. *Corbett* (Id. 574). The cases relied on by respondent involved the so-called " California use tax."  This is a tax on the exercise by the taxpayer of any right or power incident to the ownership of goods, except the sale thereof in the regular course of business.  " Use " includes the storage of such goods.  Storage is defined as the keeping or retention of goods subject to the tax.  In the cases cited by the respondent the Supreme Court held that, though the property sought to be taxed had been purchased in interstate commerce, a moment arrived after sale when the articles reached the end of their interstate destination and did not begin to be consumed, and at that moment the State might impose a tax on the storage and use of the goods. Such taxes are in the nature of a property tax, and the cases relating to them have no application to a tax imposed on a sale where the sale is a transaction in interstate commerce.

Another question presented in this proceeding concerns the taxability of a large machine constructed for the petitioner in its plant in New York city.  The machine is referred to in the testimony as " Darco Unit No. 2."  The machine is an intricate one used for revivifying a carbon product known as Darco, used in the decolorization and refining of sugar.  The unit consists of almost one thousand parts built in a plant on a special foundation erected for the purpose by the petitioner.  The contract for the erection was made with Darco Sales Corporation, a Delaware corporation having an office in New York.  The petitioner is a New York corporation.  The agreed price was $36,000, in return for which the parts were to be delivered and the installation of the plant supervised by Darco Sales Corporation, according to plans which were drawn by Darco. The labor necessary in the installation of the plant was supplied by the petitioner at its own cost and expense.  The plant involved the use of patented articles, and licenses to use the same were granted by the agreement.  Royalties were to be paid on the basis of the carbon product in connection with the operation of the

machine. This carbon produce we have heretofore referred to as "Darco" in connection with our discussion concerning the interstate transactions. We held that the sale of such carbon product was an interstate transaction. That was because it appeared that it was the understanding of the parties that it would come from a point in Texas where another corporation, affiliated with Darco Sales Corporation, had its plant. It does not appear, however, that the contract for the erection of the machinery necessarily contemplated the transportation of materials from without the State. The question involved is whether the sale of the machine was a sale of tangible personal property or was essentially one for services. While the contract involves the rendition of services to some extent, in that the seller of the machinery was to draw plans and supervise the erection of the machinery, we think that in so far as the proof herein discloses, it was essentially a sale of goods.

The petitioner offered no proof to show what portion of the contract price represented the value of the supervisory services rendered by the Darco Sales Corporation.

The taxpayer points to a regulation adopted by the comptroller, known as article 75, which provides in effect that contracts for the furnishing of materials and supplying of services for a lump sum are not taxable, unless the agreed price for the materials is separately stated from that for the services. The comptroller contends that this regulation has no application to the present sale, that it refers merely to building contracts. The present contract is not essentially a building contract. Here the labor, other than that of a supervisory nature, was furnished by the buyer.

Upon the proof in the record the petitioner has not shown sufficient reason to relieve itself of the payment of taxes on this transaction.

The determination of the comptroller should, therefore, be modified by eliminating the tax with respect to all matters other than that imposed on the labels and on the machine known as "Darco Unit No. 2," and as so modified confirmed.

O'MALLEY, TOWNLEY and DORE, JJ., concur; COHN, J., dissents.

COHN, J. (dissenting). The proof does not show that the larger containers taxed by respondent were purchased by petitioner for resale as tangible personal property. The receptacles were bought by petitioner for its own use as a means of conveying its products to its customers. After the product has reached the customers of the American Molasses Company, the containers have already been used and are no longer new. Any further use by petitioner's customers is a second-hand and secondary use.

Petitioner is not in the business of selling containers. That its customers do not know what charge is being made for the containers and that they are indifferent to specifications thereof, show that they are not interested in purchasing containers from petitioner. They purchase the molasses which petitioner sells and the container is merely an incident to the sale of the commodity.

In principle there is no distinction between the containers used by petitioner and wrapping paper used by another as a medium of conveying his products to his customers. Both are used for the same purpose and are consumed by those who engage their use as an incident to their business, and the cost is figured as a part of the overhead expense of the business. (*City Paper Co.* v. *Long*, 235 Ala. 652; 180 So. 324.) Merely because the container is more likely to be put to some further use than is the wrapping paper, furnishes no ground for holding that a sale has been made in the one instance and not in the other.

For the foregoing reasons, I dissent and vote to confirm the determination of the comptroller with respect to the imposition of the tax on the purchase of containers other than those which were involved in transactions in interstate commerce.

The determination of the respondent should be modified by eliminating the tax imposed on pails and drums purchased by petitioner from the Wheeling Corrugating Company, Pittsburg Steel Drum Company and National Steel Drum Company, and by eliminating the tax on the vegetable carbon known as " Darco " and the coal purchased from the Logan Supply Company, and as so modified confirmed.

Determination modified by eliminating the tax with respect to all matters other than that imposed on the labels and on the machine known as " Darco Unit No. 2," and as so modified confirmed. Settle order on notice.