262 So.2d 132 (1972)
L. A. FREY & SONS, Plaintiff and Appellee,
v.
LAFAYETTE PARISH SCHOOL BOARD et al., Defendants and Appellants.
No. 3831.
Court of Appeal of Louisiana, Third Circuit.
May 10, 1972.
*133 Mouton, Roy, Carmouche & Hailey, by H. Purvis Carmouche, Jr., and Davidson, Meaux, Onebane & Donohoe, by Joseph Onebane, Lafayette, for defendants-appellants.
Jerome J. Reso, Jr., and Joel A. Mendler, New Orleans, for plaintiff-appellee.
Before SAVOY, CULPEPPER and FRUGÉ, JJ.
CULPEPPER, Judge.
This is a suit to recover sales tax paid under protest by L. A. Frey & Sons, Inc., to the Lafayette Parish School Board. From an adverse judgment, the School Board appealed. Frey answered the appeal, seeking modification of the judgment insofar as it denied plaintiff's petition for a refund of certain penalties and interest.
The principal issue is the applicability of the sales or use tax to the sale to Frey of cardboard containers. Frey places small packages of bacon, cold cuts, etc., in these containers for delivery to its customers. The containers are non-returnable. Frey contends it purchases these non-returnable containers for "resale" to grocery stores, wholesale co-operatives, schools, etc., and hence that the containers are not covered by the tax. The School Board's principal argument is that these containers are not resold by Frey. That they are used by Frey to preserve its products during storage and delivery. The School Board contends the containers are subject to the "use" tax.
There is also an issue as to sawdust used by Frey to smoke its bacon, etc. And, further, there are issues concerning penalties, attorney's fees and interest.
*134 GENERAL FACTS
The facts show that Frey is a Louisiana corporation engaged in manufacturing and processing meat products for wholesale distribution. It operates two processing plants, one in the city of New Orleans, and the other in the city of Lafayette. Frey purchases the various sized non-returnable cardboard containers and uses them in the packaging, handling, storage and shipment of its vacuum-packed products, such as bacon, cold cuts, etc. These containers are specially designed for strength, insulating qualities and methods of sealing required for vacuum-packages. They are corrugated and consist of a laminated board outside wall, an air space and a laminated inside wall. Special resins are used in manufacturing the cardboard to withstand humidity. Self-locking features, instead of staples, are designed to reduce to a minimum the danger of puncturing the thin film of the vacuum-packages.
Frey sells its products to two general groups of customers. The first are individual store owners, to whom Frey delivers its products in the cardboard containers. Generally, the store owner removes the packages of bacon, cold cuts, etc., from the cardboard containers and places them on display. He can then do whatever he wishes with the container. He can use it or throw it away.
The other principal group of customers is warehouse systems, which operate under a co-operative plan. They purchase from Frey in large quantities and then deliver to their individual stores. Where Frey sells to these warehouses, the packages of bacon, cold cuts, etc., remain in the cardboard containers until they are distributed by the warehouses to the individual stores.
In all cases, ownership and possession of the non-returnable containers passes to Frey's customers. There is no separate price for the container. The price charged for the vacuum-packed products includes the cost of the container.
SALE OF CONTAINERS TO FREY, A SALE FOR RESALE, NOT SUBJECT TO THE SALES OR USE TAX
Section 2.01 of the ordinance levies a tax "upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services within this Parish, as defined herein."
Section 1.15 of the ordinance provides:
"Retail Sale" or "Sale at Retail" shall mean a sale to a consumer or to any person for any purpose other than resale in the form of tangible personal property." (Emphasis supplied.)
The purpose of excluding from the tax sales for resale is to avoid double taxation. Otherwise, the ultimate consumer would pay a tax upon a tax.
The sales and use tax ordinance in question here does not expressly provide for containers, packaging materials, etc. Nor do we find any Louisiana case dealing with the problem. However, there is persuasive jurisprudence from other states.
For instance, in Moore v. Arizona Box Company, 59 Ariz. 262, 126 P.2d 305 (1942), a produce packer purchased prefabricated wooden materials to make crates for lettuce, cantaloupes, etc. Ownership and possession of the crates passed with the produce along the line of distribution until the contents were removed and sold to the ultimate consumer. The Arizona statute, as the ordinance in the present case, excluded sales for resale, and there was no express provision for containers at the time. The Tax Commission contended the crates were not sold for a separate price, had no value apart from their contents and were discarded after the contents were removed. Hence, that the crates were not resold but, instead, were "consumed", the same as paper and string used to wrap packages.
*135 The court rejected this argument, holding as follows:
"The cases of Wiseman v. Arkansas Wholesale Grocers' Ass'n, 192 Ark. 313, 90 S.W.2d 987; McCarroll v. Scott Paper Box Co., 195 Ark. 1105, 115 S.W.2d 839; American Molasses Co. of New York v. McGoldrick, 256 App.Div. 649, 11 N.Y.S.2d 289; Id., 281 N.Y. 269, 22 N.E. 2d 369, and Lee v. Hector Supply Co., 133 Fla. 849, 183 So. 489, contain elaborate discussions of analogous situations. While the language and the arguments used differ as well as the circumstances, we think running through all of them the thread of the idea appears that if the container adds to the value of the finished produce when sold in it, as compared with its value for sale without the container, then the container itself is sold to the retailer for the purpose of resale and is not subject to tax as an original retail sale.
"(2) The point where some of the cases and opinions seem to have gotten away from the logical track is a failure to recognize that the mere fact that, though the amount of the value added to the product by the use of the container may be small or may not be determined with even reasonable exactitude either on the basis of per cent or of dollars and cents, yet if the value is actually added and the salable value of the produce increased by the use of the container, it makes no difference that such increase cannot be determined with accuracy It is obvious in the present case that the container is purchased by the packer only for the purpose of passing on together with the fruit or vegetable; that it cannot be used in any other practical manner, and that without the container the packer's business would be ruined and his product, for all practical intents and purposes so far as resale is concerned, valueless. Under these circumstances, we think the container was sold by plaintiff for the purpose of resale, and that it is not subject to the two per cent retailer's sales tax."
After the decision in the Moore case, the Tax Collector for the State of Arizona adopted regulations having specific application to containers. Regulation 2.27.1 dealing with sales tax provides:
"The term `container', as used herein, means the articles in which tangible personal property is placed for shipment and delivery, and materials from which such containers are manufactured. Sellers of containers to purchasers who use the containers in the sale of tangible personal property are deemed to be making sales of such containers to purchasers for purposes of resale if the purchaser transfers the containers with the tangible personal property sold in such containers. Sellers of containers to purchasers who do not transfer the ownership thereof to others by sale are subject to tax on such sales."
In American Molasses Company of New York v. McGoldrick, Comptroller, 256 App. Div. 649, 11 N.Y.S.2d 289 (1939), the plaintiff sold its liquid product in various sized pails, barrels, steel drums, etc. The containers were non-returnable, but were sometimes used or resold by the customer. The court held:
"The present containers differ from wrapping paper, string, etc., used by a merchant to wrap or tie his merchandise. After use such wrappings are considerably changed in form. They may not readily be used again for the same commercial purpose. They become essentially waste. They are, therefore, consumed to a far greater extent than are the present containers. In addition, the cost of such wrapping articles is ordinarily figured as part of the overhead or profit, and does not, in most instances, directly vary the cost of the article sold. We draw such a distinction in the immediate case. Here a portion of the tax imposed was based on the purchase of labels lithographed with advertisements of petitioner's products.

*136 These labels were pasted on the barrels. They were incapable of further use and, in our opinion, the purchase thereof was properly taxed as distinguished from the purchase of the barrel itself. The labels were not bought for resale as tangible personal property. This distinction was recognized in two cases which were decided in the State of Arkansas. There the Supreme Court, in Wiseman v. Arkansas Wholesale Grocers' Association, 192 Ark. 313, 90 S.W.2d 987, held that purchases of twine, wrapping paper, etc., were taxable, because such things were consumed when placed on the packages by the retailer. The Court pointed out that such wrapping materials did not substantially affect the price of the articles, but were taken care of out of profits.
"In a later case (McCarroll v. Scott Paper Box Company, 195 Ark. 1105, 115 S.W.2d 839), the same Court, in applying the same statute, held that a manufacturer was not required to pay a retail sales tax on pasteboard cartons sold to a bakery company. The bakery used the cartons in which to pack its biscuits. It resold the packaged articles to retail merchants. It appeared that similar biscuits were sold in bulk or as loose biscuits. When sold in bulk the price was lower than when packaged. The statute involved imposed a tax on sales at retail, and like our local law excluded sales for resale from taxation. The Court said in the McCarroll case, supra, that as the cost of the carton added a definite percentage of increase to the sales price of the biscuits, the cartons were resold; that the bakery company did not consume them, and that, therefore, no tax was collectible when the cartons were purchased."
As can be seen from the cases discussed above, the problem is not without difficulty. Each case depends upon its own facts to determine whether it involves containers which are resold, or materials such as paper, string, etc., which are consumed. We think the present case clearly falls within those holding that the non-returnable containers are resold. Although these containers are not sold for a separate price, ownership and possession passes to Frey's customers, along with their contents, and they can be used or disposed of by the customer. They are specially designed and add salable value to Frey's products. In the case of the wholesalers to whom Frey sells, the containers are used by them to deliver the products to their retail stores. We conclude the containers are purchased by Frey for resale and are not subject to the tax.
To hold otherwise would result in double taxation. For the evidence shows that the cost of the containers is reflected in the price of the meat products. If Frey has to pay a sales tax when it purchases the containers, and a second tax is collected when the containers are resold by Frey, this will obviously result in a tax on a tax.
The School Board contends that since the Lafayette Parish ordinance generally tracts the State Sales and Use Tax Statute, we should construe it according to the following regulation which has been promulgated by the Collector of Revenue of the State of Louisiana:
"Where container material such as crating, packaging, cases, excelsior, bail bonding and the like are used in connection with the preparation for sale of other tangible personal property sold for resale and where these materials do not pass to the ultimate consumer together with the tangible property originally contained therein then the sale of such material to a person using them for crating, packaging or wrapping for dealership to be a sale at retail and the purchaser thereof is required to pay the tax upon the amount of receipts therefrom to the vendor." (Emphasis supplied.)
The Lafayette Parish School Board has not adopted a similar regulation. And the regulation of the State Collector of Revenue is not controlling as to the ordinance at *137 issue here. Furthermore, a strong argument can be made that such a regulation would be inconsistent with the ordinance. The State regulation provides that containers are not purchased for resale "where these materials do not pass to the ultimate consumer." Neither the State statute nor the Lafayette ordinance makes resale depend on whether the container passes to the ultimate consumer. This was the basis of the decision by the trial judge who stated:
"The Court is of the opinion that the purchase of nonreturnable containers by Frey is a purchase for resale by it and is, therefore, not subject to a tax under the controlling ordinance. The test of taxability does not depend upon whether the container accompanies the product to the ultimate consumer as contended by the Board. The test to be applied is whether the purchase of the container by Frey is a sale at retail or a sale for resale."
Supporting our decision is the jurisprudence that tax statutes must be construed liberally in favor of the taxpayer and against the taxing authority, State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601 (1937); Collector of Revenue v. Mossler Acceptance Company, 139 So.2d 263 (La.App. 1st Cir. 1962).
THE SAWDUST ISSUE
Frey purchases sawdust which it burns for smoke to cure meat products. Section 1.15 provides that the tax does not apply to "sales of materials for further processing into articles of tangible personal property for sale at retail." Frey contends the purchase of the sawdust is exempt since the term "processing" includes not only materials which are incorporated into the final meat product, but also those which are used to cure or flavor the meat, such as salt, pepper, etc. We think the trial judge correctly ruled that the sawdust was used for the processing of meat and is therefore exempt.
ATTORNEY'S FEES
Section 9.03 of the ordinance provides that if the tax due is not paid on or before the 20th day of the month next following the month for which the tax is due, additional interest and penalties are due, "and in the event of suit, attorney's fees at the rate of 10% of the aggregate of tax, interest and penalties." Under this provision, attorney's fees are not due unless the School Board was forced to file suit to collect delinquent taxes. In the present case, suit was not required to collect the tax. Frey paid the tax under protest and then filed the present suit for recovery of same under Section 11.01 which permits such a procedure.
We find the district court correctly rejected the School Board's demand for attorney's fees.
INTEREST AND PENALTIES ON TAX DUE BY FREY ON PURCHASES OTHER THAN THE CONTAINERS
The facts show that as a result of an audit by the School Board of Frey's Lafayette operation, the School Board filed an assessment on November 4, 1970 for additional sales tax, interest and penalties for the taxable period May 1, 1967 through April 30, 1970, as follows:

" TAX PENALTY INTEREST TOTAL
Use Tax on
purchases other
than containers 3,780.57 911.74 320.50 5,012.81
Containers which
do not accompany
the product to the
ultimate consumer 3,883.01 929.70 399.54 5,212.25
 _________ ________ _______ __________
 $7,663.58 1,841.41 $720.04 $10,225.06"
 ========= ======== ======= ==========

*138 On November 11, 1970, Frey paid the assessment of $10,225.06 under protest, as provided by Section 11.01 of the ordinance. This suit was filed on December 9, 1970, seeking to recover the sum of $6,123.99 itemized as follows:

"Sales tax assessed with respect to
"Containers which do not accompany
the product to the ultimate consumer' $3,883.01
Penalties assessed with respect to
'Containers which do not accompany the
product to the ultimate consumer' $ 929.70
Interest assessed with respect to
'Containers which do not accompany
the product to the ultimate consumer' $ 399.54
Penalties assessed with respect to other
sales tax $ 911.74
 _________
 $6,123.99"

By amended petition, Frey also sought to recover sales tax assessed and paid with respect to sawdust, in the sum of $104.09.
Since the district court concluded that the imposition of taxes on the containers and sawdust was erroneous, the court denied the School Board interest and penalties on these items. However, the court did award the School Board $320.50 in interest and $911.74 in penalties on items other than the containers, as shown by the assessment, supra.
Frey contends that its failure to pay the tax of $3,780.57 on purchases other than the containers was based on a reasonable difference of opinion regarding the applicability of the tax, and hence that penalties and interest are not due. We cannot agree. Section 9.03 of the ordinance expressly provides that if the amount of the tax due by the dealer is not paid or on before the 20th day of the month next following the month for which the tax is due, the interest and penalties shall be collected. A dealer who fails to pay the tax does so at his own risk. It is true that Section 9.24 allows the director to waive payment of interest and penalties, if the failure to pay the tax "is explained to the satisfaction of the director", but there has been no such waiver by the director in the present case.
THE AWARD TO FREY OF "LEGAL INTEREST", RATHER THAN 2%, AS PROVIDED BY THE ORDINANCE
The district court judgment awards Frey the sum of $5,316.34, representing a refund of the taxes on the containers and the sawdust, together with "legal interest thereon from date of judicial demand until paid." Section 11.01 of the ordinance, which pertains to payments under protest, provides "If the dealer prevails, the director shall refund the amount to the claimant, with interest at the rate of 2% per annum covering the period from the date said funds were received by this taxing authority to the date of refund." We think these express provisions of the ordinance are controlling. This was probably an oversight on the part of the trial judge as a result of these provisions of the ordinance not being brought to his attention. The judgment must be amended accordingly.
DECREE
For the reasons assigned, the judgment appealed is amended so as to change the provision for interest to conform to Section 11.01 of the ordinance. Otherwise, the judgment is affirmed.
Affirmed, as amended.