583 So.2d 1195 (1991)
EXXON CORPORATION
v.
Otha Lynn SCHOFIELD, Director of Finance for the City of Baton Rouge and the Parish of East Baton Rouge.
No. CA 90 1074.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
Writ Denied November 1, 1991.
Robert Roland, Baton Rouge, for plaintiff-appellant Exxon Corp.
David R. Cassidy, Baton Rouge, for defendant-appellant Otha Schofield, Director of Finance for City of Baton Rouge, etc.
Before SAVOIE, CRAIN and FOIL, JJ.
FOIL, Judge.
Exxon Corporation (Exxon) filed this suit to recover sales and use taxes paid under protest, claiming that use of certain materials comes under various exclusions of the tax ordinance. The defendant taxing authority, Otha Lynn Schofield, Director of Finance for the City of Baton Rouge and the Parish of East Baton Rouge (City-Parish), answered Exxon's petition and reconvened for 10% attorney's fees on all *1196 taxes, interest and penalties. The parties later stipulated to a refund of the amount paid pending adjudication of the matter.
Exxon manufactures and sells certain polyethylene and rubber products produced in its plastics and chemical plants at its Baton Rouge Refinery. The City-Parish claimed taxes are owed on certain materials utilized by Exxon in the manufacture, packaging and shipping of its products. After trial, in written reasons for judgment, the trial court ruled that no taxes were owed by Exxon. Subsequently, in amended reasons for judgment, the court issued the following three rulings:
(1) Initiators and chain transfer agentsThese materials form an integral and identifiable part of the polymer produced and are purchased for "further processing" under the terms of the Parish ordinance. They are thus excluded from taxation.
(2) Ethylene, propylene and HOF (Heavy OXO Fraction)The temporary detour of these materials through the refrigeration unit is not a taxable use because all of the product is ultimately sold and the product is then taxed at the point of sale. Imposition of the use tax would be a duplicate tax, which is prohibited by City-Parish ordinance.
(3) Packaging materialsExxon is a "dealer" and, as such, should have collected sales tax for these "retail sales" from its customers. Under the ordinance, Exxon is liable for failure to collect the tax. Exxon owes the City-Parish $748,719 plus interest.
Exxon appealed, urging error in ruling 3, and the City-Parish appealed, contesting rulings 1 and 2. We disagree with the City-Parish, but agree with Exxon. Accordingly, we reverse that portion of the judgment assessing taxes on the packaging materials. We will address each issue in the order of the rulings noted above.

INITIATORS AND CHAIN TRANSFER AGENTS
The City-Parish argues that the initiators and chain transfer agents are taxable because they were not bought by Exxon solely for resale, nor do they qualify for the reprocessing exclusion. It asserts that these chemicals are processing tools, similar in function to the fuel used for machinery, which are consumed by Exxon in the polymerization process.
Exxon contends that the initiators and chain transfer agents used in its manufacture of polyethylene constitute raw materials purchased for further processing and come within the reprocessing exclusion of the taxing ordinance.
The issue is whether the materials in question are used by Exxon as an ultimate consumer (as in the case of fuel for which a sales/use tax is due when purchased by the manufacturer), or whether, on the other hand, the materials are processed into the final product so that the purchaser of the final product, as the ultimate consumer, pays the tax rather than the manufacturer. Before addressing the legal aspects of this issue, we feel a summary of the factual context is appropriate.
The polymerization process begins with the introduction of ethylene and continues with the addition of various chemical ingredients, including the initiators and chain transfer agents. As testified to by Exxon's witness, Mr. William J. Bailey, an expert in the field of polymer chemistry, the process, in a simplified form, is as follows. Essentially, a monomer (ethylene), a type of building block, is converted to a polymer, a giant molecule called a "macromolecule." Several thousand macromolecules are put together to form a big, long chain. After the ethylene is introduced, the process involves three chemical steps or reactions which are ongoing and occur within a matter of a fraction of a second.
The first step occurs when certain chemicals or chain initiators are introduced and then heated. High pressure and high temperature are used to make the initiators break into fragments which produce free radicals. This is known as the chain initiation stage.
The second reaction which occurs is the chain growth. During this stage, due to high pressure and high temperature, the *1197 free radicals will react with the heated ethylene to form another radical. These reactions continue moving down a "chain" until two radicals react with themselves. The amount of initiators introduced affects the size of the molecule produced. For instance, a small amount of initiators produces an enormously long "chain," while a large amount of initiators produces a fairly short "chain."
The final step in the chemical process is chain termination. This occurs when two chains come together and form a stable bond at that point, with initiator fragments on both ends. The end result is a macromolecule with an identifiable shape and a specific molecular weight.
Exxon also uses other chemicals called chain transfer agents to achieve the same result as using more initiators, which are very expensive. Chain transfer agents cause certain molecules, which would have been added to the bottom of a growing chain, to be transferred to another molecule, thereby creating two molecules instead of one. The result is a lower average molecular weight.
Ultimately, the various chemicals used by Exxon are manufactured into one-eighth inch polyethylene pellets which are then sold to Exxon's customers. Each pellet contains a quadrillion (a billion times a billion) of the "chains" or macromolecules referred to above. As noted, different recipes employing variances in the initiators and chain transfer agents are used to produce the approximately 80 different reactor grades of low density polyethylene products required by Exxon's customers. Differences in the amounts of these chemicals affect the resulting physical properties of the products; for example, molecular weight, tensile strength and density. Each grade of polyethylene provides the different properties required by Exxon's customers for their particular use of the end product.
The issue we are faced with involves the applicability of the reprocessing exclusion to the City-Parish sales/use tax set forth in Parish Ordinance 7714. Because retail sales tax should only apply to sales to the ultimate consumer of the goods, the sale of materials for further processing is excluded from the definition of "sale at retail." Section 1(f) of the ordinance provides, in pertinent part:
(f) The term "sale at retail" shall not include sales of materials for further processing into articles of tangible personal property for sale at retail ...
Rule 38 of the rules and regulations of the City of Baton Rouge for administration of the sales and use taxes sets forth the administrative construction of the above reprocessing exclusion. It states as follows:
Rule 38. Sales to manufacturers and producers.
The gross receipts or gross proceeds derived from sales of raw materials to manufacturers and producers to be used in fabricating or producing finished articles of tangible personal property for resale, which become a recognizable, integral part of such finished articles, are not subject to the tax imposed under the ordinance. The proceeds derived from subsequent sales of such finished articles of tangible personal property to consumers or users, are subject to the tax.
City-Parish Ordinance 7714 is substantially the same as the state sales/use tax set forth in La.R.S. 47:301. In the case of Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976), the Supreme Court addressed the issue of the interpretation of the state sales/use tax. The Court found that the most reasonable construction of the statute is that, in order to be exempt from taxation, the materials must be purchased for the purpose of resale, or for processing into the article produced for sale. The Court used the administrative construction of the statute, which was in all respects the same as Rule 38 above, as a persuasive aid in its interpretation of the definition of "sale at retail." As such, the Court held that the materials used in the manufacturing process must form a recognizable, integral part of the finished product. The Court defined "integral" in accordance with Webster's Third New International Dictionary as "of, relating to, or serving to form the whole: essential to *1198 completeness: organically joined or linked." Traigle v. PPG Industries, Inc., 332 So.2d at 781. The Court held that the trace of carbon found in the final chlorine product involved in that case was the result of an unintended inefficiency of the manufacturing process, was of no benefit to the product sold, was chemically distinct from and inessential to the product, formed no part of it organically, and was in the nature of an impurity rather than an "integral part" of the finished product. Id.
In the instant case, the trial court held that the initiators and chain transfer agents used in Exxon's manufacturing process do form an identifiable, integral part of the polymer produced. In its reasons for judgment, the court noted that the "amount of agent or initiator introduced into a recipe substantially affects the physical properties of the end product." As such, the court rejected the City-Parish's argument that these chemicals were only used to begin and end the manufacturing process, but do not form a part of the final product. After reviewing the record in this case and familiarizing ourselves with the polymerization process (albeit on an unsophisticated level), we agree with the trial court.
We conclude that the initiators and chain transfer agents are chemically linked to the final product and are an essential component of that product in that they affect the specific properties of the polymer produced. As stated by Mr. Bailey, methane is incapable of reacting alone. Exxon purchased the initiators and chain transfer agents for the purpose of combining them with ethylene, by means of chemical reactions, to produce polyethylene. These chemicals are vital to the manufacture of the 80 different grades of polyethylene pellets. Accordingly, we find no error with the ruling of the trial court, and affirm that portion of the judgment concerning this issue.

ETHYLENE, PROPYLENE AND HOF
In its appeal, the City-Parish contends that, to the extent that these chemicals are used for purposes other than resale, they do not qualify for the resale exclusion. Exxon, on the other hand, argues that the temporary detour of a small portion of the ethylene and propylene from the main pipeline through a plant refrigeration unit and a similar detour from the mainstream of a portion of the HOF are not taxable uses within the City-Parish ordinance.
Section 1(e) of City-Parish Ordinance 7714 sets forth the "sale for resale" exclusion to the sales/use tax and states, in pertinent part:
(e) A "retail sale" or a "sale at retail" means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property ...
[Emphasis added]
The evidence reveals that the ethylene and propylene are used as refrigerants in the ethylene purification unit. They are temporarily detoured through the refinery system while en route to be resold to various customers. Mr. Richard Defeo, a chemist at the Exxon chemical plant, testified by deposition that the amount of the chemicals which is temporarily diverted is less than one-tenth of a percent of the total product amount. We note that the parties stipulated at trial that all of the ethylene and propylene is sold after use as refrigerants in plant operations. Moreover, it was stipulated that the use as refrigerants does not in any way degrade the quantity or quality or affect the value of the chemicals. All of the chemicals are sold without diminution in the sales price because of utilization of the materials during the manufacturing or refining process.
As to the Heavy OXO Fraction, or HOF, the parties stipulated that it is first used as a solvent/carrier for recovered and reconstituted catalyst in which form it is reinjected into the reactor unit. The HOF is ultimately used as raw material for reprocessing, is sold to third parties, or is further refined into derivative end products. Mr. Defeo stated that there is no measurable loss of HOF during this process. It was further stipulated that its use as a solvent/carrier in no way degrades the quality or quantity *1199 or affects the value of the HOF. However, while it is being used as such, it is not available for any of the ultimate uses previously described. It is only available for those uses after it is removed from the catalyst/HOF solution.
The City-Parish argues the fact that the ethylene, propylene and HOF are ultimately processed for resale does not make their use for other purposes any less taxable. The trial court obviously disagreed, holding that a temporary detour is not a taxable use because, ultimately, all of the product is sold. In its amended reasons for judgment, the court stated that requiring a use tax on exactly the same product would constitute a prohibited duplicate tax. We agree. If the City-Parish's argument were accepted, the same material would indeed be taxed twice, once at the time of its use, and again at the time of resale to the customer. Accordingly, we affirm the portion of the trial court judgment concerning this issue.

PACKAGING MATERIALS
Exxon has appealed the trial court's ruling concerning the packaging materials in which the polymers are shipped and/or delivered to Exxon's customers. In its original written reasons for judgment, the trial court held that these materials come within the purchase for resale exclusion of the tax ordinance (Section 1(e) of Parish Ordinance 7714). The court stated that "[o]wnership and possession of the containers passed to Exxon's customers and the cost of the packaging was included in the price of the final polymer product." The court noted it was persuaded by the case of L.A. Frey & Sons v. Lafayette Parish School Board, 262 So.2d 132 (La.App. 3d Cir.1972). However, in its subsequent amended reasons for judgment, the court found "that Exxon is a `dealer' and as such should have collected the sales tax for these `retail sales' from its customers. Under Sect. 4(b) of the ordinance, the dealer `Exxon' is liable for failure to collect the tax." Exxon contends on appeal that the trial court erred in changing its decision on the packaging materials issue. The City-Parish argues that the tax is owed because there is no specific exemption for packaging materials and these materials were not purchased by Exxon solely for resale.
Dennis G. Beard, an engineer at the Exxon Baton Rouge Plastics Plant, testified at trial that at the end of the manufacturing process, the polyethylene pellets are loaded into either hopper cars which hold approximately 180,000 pounds of product, 50-pound bags or 1,000-pound boxes. These are the primary ways in which the product leaves the plant. A very small portion of the product is in liquid form which goes into tank cars. Mr. Beard stated that roughly 5 to 10% of the packaging materials at issue consist of supplies involved in the shipment of products via hopper care.g. hatch covers, plastic caps, cable-lock seals, and valve covers. Approximately 85 to 90% of the product is shipped by hopper car, and most of the remainder goes out in the box or bag configuration. A small percentage of other material is used by Exxon in compliance with customer requests, such as pallet guards, slip sheets and top sheets. The parties stipulated that the ownership and possession of the packaging materials is transferred to Exxon's customers upon delivery of the products contained therein. It was also stipulated that the price charged for the product includes Exxon's overhead costs which incorporates the cost of the packaging materials and supplies. No separate statement of this overhead is made to the customers. Finally, Mr. Beard testified that Exxon sells only to purchasers who have certified that they are purchasing for resale or for further processing.
After a review of the record, we conclude that the packaging materials were purchased by Exxon for "resale" and, as such, are not subject to the City-Parish sales or use tax. We are persuaded by the Frey case, as the trial court stated it was in its original reasons for judgment. In that case, the Third Circuit held that Frey purchased non-returnable cardboard containers for "resale" and hence the containers were not covered by the parish sales or use tax. Similar to the instant case, in Frey, ownership and possession of the non-returnable *1200 containers passed to Frey's customers. Also, there was no separate price for the container because the price charged for the products included the cost of the container. The court in Frey pointed out that there was no express provision for packaging materials in the tax ordinance involved, which was the same as the ordinance at issue in the present case. As they could find no Louisiana case dealing with the issue, the Frey court found persuasive jurisprudence from other states to support its holding.
We note that City-Parish Rule 20 provides that when packaging materials do not pass to the ultimate consumer together with the property originally contained therein, the sale of such materials is deemed to be a sale at retail and the purchaser is required to pay the tax on those materials. While the parish had not adopted a similar regulation in the Frey case, the School Board contended that the court should construe the parish ordinance according to a state regulation identical in all respects to Rule 20 noted above. In dicta, the Frey court stated that a strong argument could be made that a similar parish regulation would be inconsistent with the ordinance because the ordinance did not make resale depend on whether the container passed to the ultimate consumer. The court agreed with the trial judge's statements that "[t]he test of taxability does not depend upon whether the container accompanies the product to the ultimate consumer ... [t]he test to be applied is whether the purchase of the container by Frey is a sale at retail or a sale for resale." L.A. Frey & Sons v. Lafayette Parish School Board, 262 So.2d at 137.
We, like the Frey court, find no jurisprudence on point. As such, concurring with the dicta in Frey, we find that City-Parish Rule 20 is inconsistent with Parish Ordinance 7714. An administrative construction cannot have weight where it is contrary to or inconsistent with the statute. Traigle v. PPG Industries, Inc., 332 So.2d at 782. Ordinance 7714 makes no specific mention of packaging materials, much less does it make the definition of "resale" hinge on whether the container passes to the ultimate consumer.
In this case, ownership and possession of the non-returnable packaging materials passes to the customer to be used or disposed of as the customer chooses. There is no separate price for the materials as the price charged for the product includes the cost of its packaging materials. We hold that the packaging materials are purchased by Exxon for resale and are not subject to the City-Parish sales or use tax. Accordingly, we reverse that portion of the trial court judgment holding otherwise.

DECREE
For the foregoing reasons, we hold that Exxon is not liable for sales/use tax on any of the materials sought to be taxed by the City-Parish. The portion of the judgment of the trial court decreeing taxes are owed on the packaging materials is reversed. Judgment is hereby rendered in favor of Exxon and against the City-Parish decreeing that no taxes are due on the packaging materials and supplies. The remainder of the trial court's judgment is affirmed. All costs of this appeal are assessed to the defendant, City-Parish.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.