CHIASSON, Judge.
Shirley McNamara, Secretary of the Department of Revenue and Taxation, State of Louisiana (Department), appeals the trial court’s finding that coke utilized by Vulcan Foundry, Inc. is exempt from sales/use tax under the provisions of La.R.S. 47:301(10) and 47:305(4).
Vulcan in the manufacture of ACTM Class 30 Iron used to make “municipal cast *1319 ings” utilizes coke to produce heat for melting scrap iron and to add necessary, though small, quantities of carbon to the iron. Vulcan melts the scrap iron in a cold blast cupola or furnace. The heating cupola is basically a large cylindrical shaped structure in which coke is placed at the bottom and in which charges or loads are made up of layers of iron and coke dumped into the cupola on top of the coke. The coke is preheated and the iron melts, filtering down through the coke and picking up the carbon which must be in the final product. This molten iron is deposited in liquid form at the bottom of the cupola and drained off into a holding ladle prior to casting. Slag waste product is trapped before it enters the holding ladle. Layers of coke must be interspersed between the layers of scrap iron in the cupola so that the molten coke at the bottom of the cupola maintains the same level throughout the melting process. The melted iron in the holding ladle is analyzed to determine whether or not it contains carbon in amounts greater than 2.90% and less than 4.0%. If the carbon level is below this amount, carbon must be added in pure form in order to bring the product up to ACTM Class 30 grade iron. The molten iron is then cast in sand molds in the form necessary for sale.
Every time iron is heated it loses carbon content, some of the carbon being vented off as carbon monoxide and carbon dioxide gases. Therefore, it is necessary that additional carbon be added to the iron either while it is being melted or sometime thereafter.
The basic chemical analysis of the coke used in this foundry is carbon 90.05%, sulfur .71%, ash 9.15%, and the balance made up of moisture and other volatile compounds. The carbon in the coke used for melting the scrap'iron attaches itself to the iron molecules and replaces the lost carbon as well as increases the carbon content of the raw material so that the requisite strength needed is in the final product.
In the trial court Vulcan successfully contended that they were exempt from sales/use tax since coke, a derivative of coal, was purchased for the purpose of . . further processing into articles of tangible personal property for sale at retail . . .,” and for use as a boiler fuel.
On appeal the Department contends “that the coke was purchased not for the purpose of resale or for the purpose of processing into the castings, but for the purpose of use and consumption, and is, in fact, used and consumed by Appellee when it is burned to melt the iron; that the minute amount of carbon which may end up in the castings does not justify exempting any of the purchases of coke, or, alternatively, justifies exempting only that much of the total amount of purchases of coke that could have been expected to end up in the castings;” and that the exemption under La. R.S. 47:305(4) is not applicable because coke is not “coal used as a boiler fuel.”
The applicable law is as follows:
La.R.S. 47:302 provides in pertinent part: “A. There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein, the levy of said tax to be as follows:
(1) At the rate of two per centum (2%) of the sales price of each item or article of tangible personal property when sold at retail in this state; the tax to be computed on gross sales for the purpose of remitting the amount of tax due the state, and to include each and every retail sale.
(2) At the rate of two per centum (2%) of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided there shall be no duplication of the tax.”
The pertinent definitions contained in La. R.S. 47:301 are:
“As used in this Chapter, the following words, terms and phrases have the mean *1320 ing ascribed to them in this Section, except when the context clearly indicates a different meaning:”
“(10) ‘Retail sale,’ or ‘sale at retail,’ means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector, upon investigation, finds to be in lieu of sales; provided that sales for resale must be made in strict compliance with the rules and regulations. . . . ”
“The term ‘sale at retail’ does not include sales of materials for further processing into articles of tangible personal property for sale at retail, nor does it include an isolated or occasional sale of tangible personal property by a person not engaged in such business.”
“(16) ‘Tangible personal property’ means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses. The term ‘tangible personal property’ shall not include stocks, bonds, notes, or other obligations or securities.”
“(18) ‘Use’ means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business.”
“(19) ‘Use tax’ includes the use, the consumption, the distribution and the storage, as herein defined.”
The applicable provision of La.R.S. 47:305(4) is:
“(4) The sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this Chapter: gasoline; steam, water (not including mineral water or carbonated water or any water put in bottles, jugs, or containers, all of which are not exempted); electric power or energy; newspapers; fertilizer and containers used for farm products when sold directly to the farmer; natural gas; fuel oil, wood waste and bagasse and coal when used for boiler fuel; . . . ”
This case is not similar to Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976), relied upon by appellant, where the carbon residue found in the final product is useless waste material and of the nature of an impurity.
The evidence in this case clearly demonstrates that the increased carbon content found in the castings is an intended and necessary additive to the scrap iron and that the method of using coke to melt scrap iron is the process by which the intended carbon increase is obtained. We therefore conclude that the coke was purchased for the purpose of further processing into articles of tangible personal property for sale at retail and is exempt from taxation under the provisions of La.R.S. 47:301(10).
We find no merit in appellant’s contention that only that portion of carbon that ends up in the castings, 3.68%, should be exempt. The entire amount of coke used in a specific measure is necessary to obtain the desired carbon increase. Furthermore, the statute does not specify that only that portion of the total amount purchased, which actually ends up in the processed article is exempt. The increased carbon content of the final product forms a component and essential part of the finished product, which is all that is required by the statute to exempt the manufacturer from the tax.
Having so decided we find it unnecessary to determine whether appellee is entitled to an exemption under La.R.S. 47:305(4).
For these reasons the judgment of the trial court is affirmed. All costs allowed by law are to be paid by appellant.
AFFIRMED.