PLOTKIN, Judge,
dissents with written reasons:
I respectfully dissent from the majority’s decision granting plaintiff, Associated Hospital Services, an exemption from paying Louisiana sales taxes on the laundry services it provides its member hospitals.
The “well-established rule” in Louisiana law is that exemptions from sales taxes should never be presumed, but must be “strictly construed and ... clearly and unequivocally and affirmatively established.” Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193, 1197 (La.1982) (on rehearing), citing Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958) (on rehearing). The Attorney General opinion, the trial court opinion, and the majority in the instant case all concede that Louisiana law does not establish an exemption for the situation presented here. Additionally, all three recognize the fact that the “furnishing of laundry, cleaning, pressing and dyeing services” is listed as a taxable “sale of services” in LSA-R.S. 47:301(14)(e).
*451 Despite the above, the trial court and the majority allow the exemption on the basis of the attorney general’s findings that Associated’s plant is simply an extension of the member non-profit hospitals and that there is “no actual ‘sale of services’ between the organization and the hospitals.”
I disagree for several reasons. First, the attorney general’s interpretation was made in derogation of the general principle, stated above, that tax exemptions must be strictly construed. By allowing an exemption under the circumstances presented by the instant case, the hospitals have been improperly allowed to create a new area of exemption not previously recognized in law in violation of all the general principles of statutory interpretation ordinarily applied in similar circumstances.
Second, I disagree with the attorney general’s original findings. Certainly laundry services are necessary to the administration of a hospital. However, many, perhaps most, hospitals in this day and age elect to send their laundry out, instead of operating in-house laundry services. The fact that laundry services are indispensable to the operation of the facility does not justify the conclusion that the laundry therefore is an “extension” of the hospital itself. Associated is a separate corporation, distinct from all of its member hospitals. Tax exempt status should not be conferred on the basis of such an “interpretation” of the facts, especially in light of the fact that the law generally disapproves of such a loose construction of the exemption statutes.
Additionally, the attorney general’s opinion that Associated was not engaged in the “sale of services” is not supported by the record evidence. The contracts between Associated and the member hospitals clearly identify all of the member hospitals as “purchasers” and refer repeatedly to the “sale” of laundry services. They require the member hospitals to send Associated a minimum amount of laundry and to pay a pro-rata share of the cost of operations. In a memorandum filed at the trial court level, Associated attempted to minimize the significance of the use of those terms in the contracts, claiming that “the essence of the obligation undertaken by each member, as an owner (not a customer) ... was to bear its share of operating costs no matter whether [Associated] may not yet have performed any services or a full month’s services.” I fail to see the distinction argued by Associated. The fact is that the member hospitals pay Associated to provide laundry services, the same way that other hospitals pay outside entities to perform laundry service. The particulars of the arrangement should not be “interpreted” in a manner that allows the corporation to avoid its sales tax obligation, especially when that interpretion is in derogation of the long-standing jurisprudence in this state.
A third reason I disagree with the majority’s decision is the fact that granting tax-exempt status to Associated gives the member hospitals an unfair advantage over other hospitals which send their laundry out, which is discriminatory to the other hospitals. The member hospitals receive a direct profit in the form of lower costs for laundry services. This gives the member hospitals a competitive edge and puts them in an unfair economic position.
Fourth, I believe that the majority's decision in the instant case will open the door to allow groups such as the member hospitals in this case to form separate corporations to provide other non-medical services which are indispensable to the operation of a hospital — services such as printing, equipment leases, uniform leases, automobile leases, etc. Like printing and rental services, the laundry services involved in this case are not relevant to the non-profit status of the member hospitals. In my view, non-profit hospitals should receive the benefits of their tax-exempt status only on medical services and supplies; they should be required to pay sales taxes on all non-medical services performed by third parties.
The final, and perhaps most important, reason for my dissent in this case is that I believe that the laundry service involved was created merely as an artifice to avoid paying sales taxes. The original member *452 hospitals decided, as have many other hospitals, that an outside laundry service would be more efficient than an in-house service. However, they realized that they would probably be required to pay sales taxes on a regular outside service and sought to avoid that result. I do not believe that we should reward that subterfuge by allowing the hospitals to avoid paying taxes on services clearly subject to taxes under the black-letter law of this state.