Dear Representative Ellington:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub. The request has been assigned to me for resolution.
In your correspondence, you make the following observation:
 ". . . It is my opinion that anyone involved in the production of a product is free of the burden of sales taxes on ingredients used in the production process for market since these are merely components of an end product, and, per R.S. 47:305(1), a sales tax is to be collected only once, i.e., at the time of sale of an end product. . . ."
Pursuant to our recent conversation, we are aware that you are specifically concerned about those sales of materials which are utilized by farmers in the production of crops or animals for market. The scope of this opinion is limited to address these particular sales with reference to the statutory definition of "retail sale" or "sale at retail".
Louisiana law imposes a tax on tangible personal property that is sold at retail in this state. LSA-R.S. 47:302(A). The terms "retail sale" and "sale at retail" are defined as follows, in pertinent part:
 "For purposes of the imposition of the state sales and use tax `retail sale', or `sale at retail' means a sale to a consumer or to any other person for any purpose other than for resale in the form of tangible personal property. . . ." LSA-R.S. 47:301(10)(a)(i).
Expressly excluded from taxation are all sales of materials that are purchased for further processing into articles of tangible personal property for sale at retail. This exclusion, known as the "Raw Material Exclusion", provides:
 "The term `sale at retail' does not include sales of material for further processing into articles of tangible personal property for sale at retail or sales of electricity for chlor-alkali manufacturing processes, nor does it include an isolated or occasional sale of tangible personal property by a person not engaged in such business." LSA-R.S. 47:301(10)(c).
The Louisiana Supreme Court has held that the test for determining whether a material is within the ambit of the Raw Material Exclusion is whether the material was purchased for the purpose of "further processing into" the finished product, such that the material or any of its elements become "a recognizable, integral part" of the finished product. The Court defined "integral" as "essential to completeness: organically joined or linked." Traigle v. PPG Industries, Inc., 332 So.2d 777, at page 781 (La. 1976); see also Vulcan Foundry, Inc. v. McNamara,414 So.2d 1193 (La. 1982).
The proper statutory construction given the Raw Material Exclusion has been enunciated in other appellate cases:
 "A sale of raw material which is to become an integral part of a manufactured article that is to be later sold at retail is not subject to the sale or the use tax. The raw material becomes an integral part of the article to be sold at retail, the cost price or sales price of that raw material is theoretically incorporated into the sales price of the article, and the tax will be collected or paid when that article is later sold or used in Louisiana. The tax will be levied not upon the manufacturer, but upon the retail purchaser, user, consumer, as the case may be, of the manufacture item. Conversely, when a thing or a raw material is purchased here or is used or consumed here by a manufacturer in the manufacturing process, and that thing does not become an integral, beneficial part of the manufactured item, the manufacturer is the ultimate retail purchaser, user, consumer, as the case may be, and is obligated to pay the sale or use tax." McNamara v. U.O.P., Inc., 389 So.2d 741 (La.App. 2nd Cir. 1980); 389 So.2d at 747-748; (Emphasis added).
More recent jurisprudence has adhered to this test for determining whether an item is subject to the Raw Material Exclusion. See Tarver v. Ormet Corporation, 597 So.2d 1172
(La.App. 1st Cir. 1992) (caustic soda was a "raw material" in the manufacturing of alumina and aluminum hydroxide, and thus fell within the raw material exclusion from the sales tax); Exxon Corporation v. Schofield, 583 So.2d 1195 (La.App. 1st Cir. 1991) (certain raw and packaging materials purchased by Exxon were not subject to local sales or use tax).
In Attorney General Opinion Number 86-475, this office observed that the word manufacturing is not used within the language of the Raw Material Exclusion in LSA-R.S.47:301(10)(c), thus the further processing is not restricted to manufacturing operations. "These statutory provisions appear clearly to apply to all materials which are processed into articles of tangible personal property (corporeal movables) which are to be sold, eventually down the market chain, at retail. Therefore, these statutory provisions apply to agricultural businesses and farmers who plant, grow, harvest, and sell crops in the agricultural products market." Attorney General Opinion Number 86-475 at page 5; (Emphasis added).
The author of Attorney General Opinion Number 86-475 further noted that, although certain agricultural items have been codified as expressly exempt from taxation, (i.e., seeds for use in the planting of crops, LSA-R.S. 47:305.3) these items were never really taxable in the first instance. Sales of seeds, fertilizer, and containers to farmers for planting, growing, selling, and packaging their crops for market are not considered "retail sales" subject to taxation, but rather form an integral part of the end product to be sold and taxed to the consumer at that time.
This office is of the opinion that the reasoning and conclusions of the author in Attorney General Opinion Number 86-475 remain correct in light of current law. The test for determining whether a sale of materials to agricultural producers is for "resale in the form of tangible personal property" and not subject to taxation requires an evaluation of that particular material in light of the "integral part" test required by the jurisprudence.
Subsequent to Attorney General Opinion Number 86-475 (and in conformity with the conclusion of that author), the Legislature enacted another exclusion from the definition of "sale at retail" which specifically encompasses raw agricultural commodities. Pursuant to Act 355, Section 1 of the 1988 Regular Legislative Session, LSA-R.S. 47:301(10)(e) now provides:
 "The term `sale at retail' does not include the sale of raw agricultural commodities, including but not limited to feed, seed, and fertilizer, to be utilized in preparing, finishing, manufacturing, or producing crops or animals for market." LSA-R.S. 47:301(10)(e); (Emphasis added).
By use of the language "including but not limited to" the legislature acknowledged that the list of raw agricultural commodities excluded from the definition of "retail sale" in LSA-R.S. 42:301(10)(e) is illustrative only. However, a statement that all materials used in the production of crops are excluded from the term "retail sale" and therefor from taxation is overly broad. This determination must necessarily be made on a case-by-case basis. Again, those sales of materials to agricultural producers not specifically excluded by statute from the definition of "retail sale" in LSA-R.S. LSA-R.S.47:301(10)(e) may be excluded from taxation only if these materials comprise an "integral part" of the end product.
We hope this interpretation of existing statutory authority will be helpful to you. Should you have further inquiries, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0230E